JOSEPHINE LINKER HART, Justice, dissenting.. A subcontractor who has supplied labor and material in the construction of an improvement to real estate by virtue of a contract with a contractor “shall have, to secure payment, a lien” upon the improvement. Ark.Code Ann. § 18^4 — 101(a) (Repl.2003). SCI obtained a lien on the project. BCC then contested the lien and purchased from Travelers a lien-release bond in accordance with Arkansas Code Annotated section 18-44-118 (Supp.2013). According to that statute, the “bond shall be conditioned for the payment of the amount of the lien, or so much of the lien as may be established by suit, together with interest and the costs of the action, if upon trial it shall be found that the property was subject to the lien.” Ark.Code Ann. § 18^44-124(a)(2). Recourse is “only against the principal and surely upon the bond.” Ark.Code Ann. § 18-44-118(b)(2)(B). Thus, pursuant to these statutes, the bond stands in place of the lien. The statute further provides that if an action to enforce the lien “shall be timely commenced, the surety shall be liable in like manner as the principal.” Ark.Code Ann. § 18-44-118(c). 11SAccordingly, like the principal, the surely is subject to suit. Here, SCI sued BCC and Travelers, and SCI'was awarded damages. The majority concludes, “Because BCC was not liable, then it follows that Travelers was not liable.” This conclusion, however, fails to recognize that the bond stood in place of the lien that SCI had obtained against the improvement and secured SCI’s payment for the materials and labor it provided. Also, it ignores that Travelers, like BCC, was subject to suit. Moreover, the bond issued by Travelers provided that both it and BCC are “held firmly bound” to SCI as the claimant in the sum of $146,349.86 “for the payment of which ... we bind ourselves.” By its terms, the bond “shall remain in full force and effect” until BCC pays SCI. BCC, however, did not pay SCI any amount on the jury’s award of $25,468.20 to SCI. Thus, the bond remained in full force and effect, and Travelers is “firmly bound” to SCI. The net effect of the majority’s holding is to leave SCI with neither a lien nor a bond to “secure payment” for its materials and labor that the jury concluded that SCI had provided. The majority’s holding does not give proper respect to our material-men’s lien statutes, and the majority does not cite authority to support its novel interpretation. This court must liberally construe bonds in favor of the laborers and materialmen for whose benefit the bond was given because the sureties on the bond were organized and paid to make surety bonds, and the only protection for the payment for labor performed or material furnished is to be found in terms of a bond. See generally Holcomb v. Am. Sur. Co., 184 Ark. 449, 42 S.W.2d 765, 768 (1931) (applying this analysis in a public-works case). SCI can only look to the bond for payment, and Travelers is in the business of furnishing bonds. Accordingly, the circuit court |1fidid not err in denying the motion for directed verdict made by Travelers. Furthermore, there was substantial evidence to support the jury’s verdict.[1] SCI presented evidence that it performed dirt work and was not paid. At the close of SCI’s case, the circuit court granted BCC’s motion for directed verdict but denied Travelers’ motion for directed verdict. The settled rule is that if a defendant goes forward with “proof after a motion for a directed verdict was denied, any error in denying the motion [is] waived.” Higgins v. Hines, 289 Ark. 281, 283, 711 S.W.2d 788, 784 (1986). Travelers, rather than standing on the circuit court’s denial of its directed-verdict motion, introduced evidence, thus waiving its directed-verdict motion made at the conclusion of SCI’s case. Furthermore, if “after the denial of a request for a directed verdict ... a defendant introduces evidence which, together with that introduced by the plaintiff, is legally sufficient to sustain a verdict, he waives his claim of error by the court in refusing to direct a verdict ... at the close of the plaintiffs case.” Shamlin v. Shuffield, 302 Ark. 164, 167, 787 S.W.2d 687, 689 (1990). Travelers presented testimony from BCC’s project manager, Jon Virden, that BCC credited back to the owner $33,145.60 for dirt work that SCI alleged it had performed. After hearing evidence that SCI performed dirt work, that SCI was not paid, and that BCC credited back to the owner the amounts to be paid for dirt work that SCI alleged it had performed, the jury awarded $25,468.20. Thus, the jury had before it evidence that BCC had an allowance for the dirt work but failed to take this allowance and pay SCI. From the evidence 117before it, the jury could reasonably have concluded that the only reason BCC was not paid for SCI’s dirt work is because BCC specifically credited back the amount to be paid for the dirt work. The majority, by not acknowledging all of this evidence, fails to conduct a proper analysis of whether substantial evidence supported the jury’s verdict against Travelers. In doing so, it denies SCI’s proven claim against Travelers and the bond for the work that it performed. This evidence is clearly sufficient to support the jury’s verdict. Thus, I must respectfully dissent. BAKER, J., joins in this dissent. . Although the majority notes in a footnote that Travelers renewed its motion for a directed verdict at the close of its case, by then evidence had been presented, by Travelers, that supported the circuit court's decision to allow the case to go to the jury.