SLIP OPINION

Cite as 2014 Ark. 484

# SUPREME COURT OF ARKANSAS

No. CV–13–779

|  |  |
|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA; BCC CONSTRUCTION, LLC d/b/a BOYD CORLEY CONSTRUCTION, LLC<br>APPELLANTS<br><br>V.<br><br>SWEET'S CONTRACTING, INC.<br>APPELLEE | **Opinion Delivered** November 20, 2014<br><br>APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT<br>[NO. CV-09-260]<br><br>HONORABLE TIMOTHY M. WEAVER, JUDGE<br><br><u>AFFIRMED IN PART, REVERSED IN PART ON DIRECT APPEAL; AFFIRMED IN PART, REVERSED IN PART ON CROSS-APPEAL</u>. |

**JIM HANNAH, Chief Justice**

The issues in this appeal involve a pay-if-paid clause in a construction subcontract and the scope of a surety's obligations under a lien-release bond. Appellant, BCC Construction, LLC, d/b/a Boyd Corley Construction, LLC ("BCC"), and appellee, Sweet's Contracting, Inc. ("SCI"), entered into a subcontract on August 7, 2008. BCC, as the general contractor, hired SCI to perform excavation work on a Walgreens project in Batesville, Arkansas. The subcontract contained what is commonly known in the construction industry as a pay-if-paid clause. The pay-if-paid clause in this case specified that BCC's receipt of payment from the project owner for work performed by SCI was an absolute condition precedent to BCC's obligation to pay SCI for that work. After a dispute arose regarding how much compensation SCI was owed under the subcontract, SCI filed a materialmen's lien against the Walgreens

project, and BCC filed a bond in contest of the lien. Appellant, Travelers Casualty & Surety Company ("Travelers"), issued a lien-release bond as surety on behalf of its principal, BCC.

SCI filed suit against BCC and Travelers, seeking recovery against BCC for breach of contract and against both BCC and Travelers under the lien-release bond. The case proceeded to a jury trial in which SCI sought $70,184.38 in damages. At the close of SCI's case, both BCC and Travelers argued that they were entitled to a directed verdict because SCI failed to prove that it had complied with the terms of the subcontract, that SCI's evidence of damages was speculative, and that SCI's claim for the work it performed for another subcontractor, RAW, LLC, was barred by the statute of frauds. They also argued that they were entitled to a directed verdict pursuant to the pay-if-paid clause contained in the subcontract between BCC and SCI because SCI failed to present any evidence showing that the owner had paid BCC for the work SCI alleged it had performed.[1] In support of their argument, they cited *Brown v. Maryland Casualty Co.*, 246 Ark. 1074, 442 S.W.2d 187 (1969), in which this court held that a conditional-payment clause in a contract created a condition precedent to payment, explaining that "'a provision for the payment of an obligation upon

---

[1]At trial, stipulations of the parties were read to the jury:

The original subcontract price between BCC, the general contractor for the project, and SCI, a subcontractor, was in the amount of $276,419. In addition, the parties agree that the amount of $13,160 for rock excavation was approved and added to the contract price for a total agreed upon amount of $289,579.

SCI has been paid a total of $236,675.90 by BCC. BCC approved in [sic] SCI did 830 cubic yards of undercutting at a price of $16.48 per yard for a total of $13,648.40 of undercutting. The parties are in disagreement as to whether this amount should be added to the contract price.

SLIP OPINION

the happening of an event does not become absolute until the happening of the event." *Id.* at 1080, 442 S.W.2d at 191 (quoting *Mascinoi v. I. B. Miller, Inc.*, 184 N.E. 473 (N.Y. 1933)).

Based on our decision in *Brown*, the circuit court directed a verdict in favor of BCC, ruling that the pay-if-paid clause in the subcontract barred recovery from BCC because there was no evidence that BCC had been paid by the owner for the work SCI alleged it had performed.[2] Accordingly, the circuit court dismissed the claims against BCC with prejudice. The circuit court declined, however, to direct a verdict in favor of Travelers, and the case against Travelers on the lien-release bond was submitted to the jury. The jury reached a verdict in favor of SCI and awarded damages against Travelers in the amount of $25,478.20.

After trial, Travelers filed a motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial on the same grounds as its motion for a directed verdict. SCI filed a motion to alter or amend ruling, requesting that the circuit court reverse its decision to direct a verdict in favor of BCC pursuant to the pay-if-paid clause. The circuit court denied all the posttrial motions.

BCC and SCI also filed motions for attorney's fees. The circuit court denied BCC's motion, rejecting BCC's contention that it was entitled to fees as the prevailing party in the suit between BCC and SCI. The circuit court granted SCI's motion in its suit against Travelers, and awarded SCI $48,197.45. Travelers and BCC appeal, and SCI cross-appeals.[3]

---

[2]There is no dispute that BCC has not been fully paid by the owner for SCI's work.

[3]This appeal was originally filed in the court of appeals. We granted SCI's motion to transfer the appeal to this court pursuant to Arkansas Supreme Court Rule 1-2(d) (2014).

SLIP OPINION

On appeal, Travelers contends that the circuit court erred in denying Travelers' motion for directed verdict, motion for judgment notwithstanding the verdict, and motion for a new trial because (1) a surety's liability on a lien-release bond cannot exceed the liability of its principal, (2) there was not substantial evidence for the jury to find that SCI complied with its subcontract with BCC, (3) there was not substantial evidence of SCI's damages to support the verdict, and (4) SCI did not present evidence of a writing or consideration to support its claim that BCC agreed to be responsible for RAW, LLC's debt to SCI. Travelers also contends that the circuit court abused its discretion in granting SCI's motion for attorney's fees because Travelers' liability cannot exceed the liability of BCC and because SCI was not entitled to attorney's fees under the materialmen's lien statute. BCC contends that the circuit court abused its discretion in denying its motion for attorney's fees because BCC was the prevailing party in its suit against SCI.

On cross-appeal, SCI contends that the circuit court erred in granting a directed verdict for BCC on the pay-if-paid clause. SCI also contends that the circuit court erred in ruling that the subcontract was ambiguous on the issue of fill and in allowing parol evidence. Finally, SCI contends that this court should grant SCI attorney's fees and costs for both defending the action below and for those incurred in this appeal.

We hold that the circuit court erred in denying Travelers' motion for directed verdict and that the circuit court did not err in granting BCC's motion for directed verdict. We reverse the award of attorney's fees to SCI, and we do not address BCC's argument concerning attorney's fees. Accordingly, we affirm in part and reverse in part on direct

appeal, and we affirm in part and reverse in part on cross-appeal.

Many of the issues raised by the parties are intertwined. For clarity and ease of discussion, we first address SCI's point on cross-appeal that the circuit court erred in granting a directed verdict for BCC on the pay-if-paid clause.

I. *Grant of BCC's Directed-Verdict Motion*

The underlying dispute between BCC and SCI arose pursuant to the pay-if-paid clause in the subcontract.

> A typical "pay-if-paid" clause might read: "Contractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes this risk." Under a "pay-if-paid" provision in a construction contract, receipt of payment by the contractor from the owner is an express condition precedent to the contractor's obligation to pay the subcontractor. A "pay-if-paid" provision in a construction subcontract is meant to shift the risk of the owner's nonpayment under the subcontract from the contractor to the subcontractor.

Robert F. Carney & Adam Cizek, *Payment Provisions in Construction Contracts and Construction Fund Statutes: A Fifty State Survey*, 24 Construction Law, 5, 5–6 (2004). The subcontract between BCC and SCI contained the following provisions:

> Subcontractor will receive payment from the contractor once the contractor has been paid by the owner. No monies are owed to the subcontractor until BCC has received payment from the owner for the subcontractor's work.

> The parties hereto agree and acknowledge, that as an absolute condition precedent to Progress Payments to the SUBCONTRACTOR [SCI], the CONTRACTOR [BCC] must receive corresponding payment from the OWNER for SUBCONTRACTOR'S [SCI's] Work. In the event of nonpayment by OWNER, SUBCONTRACTOR'S [SCI's] remedies are against the OWNER.

> [N]o payment from CONTRACTOR [BCC] to SUBCONTRACTOR [SCI] shall be due unless the CONTRACTOR [BCC] receives payment from OWNER for the

Work of the SUBCONTRACTOR [SCI]. In the event of nonpayment by OWNER, SUBCONTRACTOR'S [SCI's] remedies are against the OWNER.

The circuit court directed a verdict in favor of BCC, ruling that the pay-if-paid clause[4] in the subcontract barred recovery from BCC because there was no evidence that BCC had been paid by the owner for the work SCI alleged it had performed. SCI contends that the circuit court should not have considered the affirmative defense of the pay-if-paid clause because BCC failed to plead or argue it under Arkansas Rules of Civil Procedure 8(c) and 9(c) (2014).[5] Generally, in deciding whether the grant of a motion for directed verdict was appropriate, appellate courts review whether there was substantial evidence to support the circuit court's decision. *E.g., Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, 432, 208 S.W.3d 792, 800 (2005). This particular point on cross-appeal, however, requires us to construe a court rule; therefore, our appellate review is de novo. *E.g., Kesai v. Almand*, 2011 Ark. 207, at 3, 382 S.W.3d 669, 671.

We hold that the circuit court correctly ruled that the pay-if-paid clause was not an

---

[4]At trial, Chuck Sweet, President of SCI, testified that he knew the pay-if-paid clause was in the subcontract and that he agreed to that provision when he signed the subcontract.

[5]Although SCI contends on appeal that, pursuant to both Rule 8(c) and 9(c), BCC waived its right to raise the pay-if-paid clause as a defense, at trial, SCI's argument was based solely on Rule 8(c). SCI did not argue at trial, as it does now, that BCC was required to plead the pay-if-paid clause as an unfulfilled condition precedent under Rule 9(c). A party is bound by the nature and scope of the arguments made at trial and may not enlarge or change those grounds on appeal. *See, e.g., Yant v. Woods*, 353 Ark. 786, 794, 120 S.W.3d 574, 579 (2003). A challenge to the pay-if-paid clause under Rule 9(c) is not preserved for our review.

SLIP OPINION

affirmative defense that must be specifically pled under Rule 8(c).[6] "The basic rule as developed under the common law is that any issue raised by the plaintiff in the complaint may be countered by a general denial in the answer, but any issue raised in the answer for the first time constitutes a new matter that must be specifically set out by the defendant as an affirmative defense." *Poff v. Brown*, 374 Ark. 453, 455, 288 S.W.3d 620, 622 (2008). An affirmative defense must be pled when a defendant admits the material allegations of the complaint but seeks to avoid the effect of such admittance by an affirmative allegation of new matter "avoiding plaintiff's case." *Id.*, 288 S.W.3d at 622. In this case, SCI asserted in its complaint that BCC had breached the subcontract by failing to do what the subcontract required it to do. BCC answered and denied that it had breached the subcontract and denied that it had failed to do what the subcontract required it to do. BCC never admitted the material allegations of the complaint—that it breached the subcontract—so it was not required to plead an affirmative defense.

SCI next contends that the circuit court's order granting a directed verdict in favor of BCC should be reversed because the pay-if-paid clause upon which it was based is unenforceable. Specifically, SCI asserts that the pay-if-paid clause cannot be enforced because

---

[6]Under Rule 8(c), "an affirmative defense must be set forth in the defendant's responsive pleading." *Poff v. Brown*, 374 Ark. 453, 454, 288 S.W.3d 620, 622 (2008). Although Rule 8(c) lists a number of affirmative defenses, "the list is not exhaustive and includes 'any matter constituting an avoidance or affirmative defense.' " *Id.*, 188 S.W.3d at 622 (quoting Ark. R. Civ. P. 8(c)). Defenses under Rule 8(c) must be specifically pled to be considered by the circuit court, and the failure to plead an affirmative defense can result in the waiver and exclusion of the defense from the case. *See, e.g.*, *Felton v. Rebsamen Med. Ctr.*, 373 Ark. 472, 480, 284 S.W.3d 486, 492 (2008).

SLIP OPINION

it conflicts with the materialmen's lien statute. This argument is not preserved for our review because SCI did not make this argument at trial in response to BCC's motion for directed verdict. *See, e.g.*, *Grandjean v. Grandjean*, 315 Ark. 620, 621, 869 S.W.2d 709, 709 (1994) ("An appellant may not change the basis for his argument or raise a new argument on appeal; he is limited to what was requested in the trial court.").

Similarly, three of SCI's remaining arguments concerning the circuit court's grant of BCC's directed-verdict motion are not preserved for our review. SCI contends that the circuit court erred in denying BCC's motion for directed verdict because (1) the jury should have been allowed to consider whether BCC violated the duty of good faith and fair dealing and whether BCC acted in a manner to frustrate the purpose of the contract, (2) the pay-if-paid clause is contrary to public policy, and (3) this court's decision in *Brown*, which upheld a conditional-payment clause, should be overruled. SCI did not raise these issues at trial; rather, SCI raised these issues in a posttrial motion. An objection made for the first time in a posttrial motion is not timely. *See, e.g.*, *Cochran v. Bentley*, 369 Ark. 159, 176, 251 S.W.3d 253, 266 (2007). Stated another way, an issue must be presented to the circuit court at the earliest opportunity in order to preserve it for appeal. *Id.*, 251 S.W.3d at 266–67. For that reason, a party cannot wait until the outcome of a case to bring an error to the circuit court's attention. *Id.*, 251 S.W.3d at 267.

We hold that the circuit court did not err in granting BCC's motion for directed verdict on the pay-if-paid clause. As such, we need not address SCI's contention that the circuit court erred in ruling that the contract was ambiguous on the issue of fill and in

allowing parol evidence.

II. *Denial of Travelers' Motion for Directed Verdict, Motion for Judgment Notwithstanding the Verdict, and Motion for New Trial*

We now turn to Travelers' contention on direct appeal that the circuit court erred in denying its motion for directed verdict, motion for judgment notwithstanding the verdict, and motion for a new trial because a surety's liability on a lien-release bond cannot exceed the liability of its principal. In this case, the circuit court found that, because the subcontract between BCC and SCI contained a pay-if-paid clause and because SCI failed to present evidence that BCC had been paid by the owner, BCC was entitled to a directed verdict under the terms of the subcontract and under the lien-release bond. But the circuit court allowed the action to proceed against Travelers, BCC's surety, under the lien-release bond.[7] Travelers asserts that the circuit court's ruling was erroneous because (1) generally, a surety's liability cannot exceed the liability of its principal, (2) Travelers, as BCC's surety, was entitled to rely upon the pay-if-paid clause as a defense, and (3) the circuit court's dismissal of BCC extinguished Travelers' liability under Arkansas Code Annotated section 18-44-118 (Supp. 2013). Typically, this court reviews the circuit court's denial of a motion for directed verdict, denial of a motion for judgment notwithstanding the verdict, and denial of a new-trial motion for whether there is substantial evidence to support the jury's verdict. *E.g., Miller Brewing Co. v. Ed Roleson, Jr., Inc.*, 365 Ark. 38, 43, 223 S.W.3d 806, 811 (2006). Here,

---

[7]We note that Travelers renewed its directed-verdict motion, on all grounds, at the close of all evidence.

however, the issues presented are questions of law, and we review questions of law de novo. *See, e.g., Gulfco of Louisiana v. Brantley*, 2013 Ark. 367, at 11, 430 S.W.3d 7, 13–14.

We begin with the basic principles of surety law. This court has defined a suretyship as a contractual relation whereby one party engages to be answerable for the debt or default of another. *See F&M Bldg. P'ship v. Farmers & Merchs. Bank*, 316 Ark. 60, 64, 871 S.W.2d 338, 340 (1994); *Fausett Builders, Inc. v. Globe Indem. Co.*, 220 Ark. 301, 304, 247 S.W.2d 469, 471 (1952); *see also Hall v. Equitable Sur. Co.*, 126 Ark. 535, 539, 191 S.W. 32, 34 (1917) ("Where the contract takes the form of ordinary suretyship, the agreement of the surety is that he will do the thing which the principal has undertaken."); Howard W. Brill & Christian H. Brill, *Arkansas Law of Damages* § 17:11 (5th ed. 2004) ("The surety contract fulfills an obligation that is owed by the principal to a third party."). Because a surety's liability is derivative, it ordinarily does not exceed that of the principal, *see Travelers Cas. & Sur. Co. of Am. v. Ark. State Highway Comm'n*, 353 Ark. 721, 729, 130 S.W.3d 50, 54 (2003), and generally, a surety may invoke all defenses available to the principal, *see* Restatement (Third) of Suretyship & Guar. § 34 (1996); *see also Berman v. Shelby*, 93 Ark. 472, 477, 125 S.W. 124, 126 (1910) (recognizing that if a principal has a complete defense to a claim, the surety is discharged). Finally, in a suretyship, the principal's contract and the bond or undertaking of the surety are to be construed together as one instrument. *F&M*, 316 Ark. at 65, 871 S.W.2d at 341.

The bond in this case states as follows:

MECHANIC'S LIEN RELEASE BOND

KNOW ALL MEN BY THESE PRESENTS:

That we, <u>Boyd Corley Construction, LLC</u> (*name of principal*) and <u>Travelers Casualty and Surety Company of America</u> (*name of surety*), organized under the laws of the State of <u>Connecticut</u> authorized to transact surety business in the State of <u>Arkansas</u> as Surety, are held and firmly bound unto <u>Sweet's Contracting, Inc.</u> (*lien claimant*) . . . herein after known as Claimant in the sum of $<u>146,349.86</u> DOLLARS lawful money of the United States of America, for the payment of which, well and truly made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally firmly by these presents;

Whereas, the Principal entered into a contract with Claimant under which Claimant agreed to perform <u>construction services</u> (*state terms of contract*) at the Walgreens – Batesville, AR project;

Whereas, Claimant has filed a lien in the amount of <u>$73,174.93</u> against that property as security for alleged labor and materials in connection with <u>construction services</u> (*nature of claimant's job*) and that claim was recorded at Book (or Reel) 2009, Page (*or image*) <u>769</u>, Official Records of Independence County, Arkansas;

Whereas, the principals dispute the correctness of this claim;

and

Whereas, that lien is released in accordance with Section 18-44-101 et seq. of the Civil Code of the State of <u>Arkansas</u>;

Now, therefore, if the principal shall pay or cause to be paid any sum which the Claimant may recover on the claim together with the Claimant's cost of suit in the action in the event of recovery of the suit, then this obligation shall be voided; otherwise, it shall remain in full force and effect.

The bond references the subcontract between BCC and SCI. Under the terms of the subcontract, BCC and SCI agreed that BCC would pay SCI for performance of "the Work,"[8] *if* the owner paid BCC for SCI's performance of the Work. Travelers' obligation

---

[8]Pursuant to Article 3 of the subcontract, the Work "comprises the construction required by the Contract Documents and includes all labor necessary to produce such construction, and all materials and equipment supervision incorporated in such construction."

on the bond was coextensive with and measured by the promises of BCC to SCI contained in the subcontract. *See Fausett Builders*, 220 Ark. at 306, 247 S.W.2d at 472. In other words, Travelers, by the bond, bound itself only to the performance of the acts that BCC had promised to perform as part of the subcontract. *See id.*, 247 S.W.2d at 472. BCC agreed in the subcontract to pay SCI if the owner paid BCC for SCI's work. Because the owner did not pay BCC for SCI's work, BCC was entitled to invoke the pay-if-paid clause as a defense. Travelers, as BCC's surety, was entitled to invoke the same defense.

Still, SCI contends that, even if the pay-if-paid clause allowed BCC to avoid liability, the clause does not absolve Travelers because Travelers had an independent obligation to SCI under the surety bond issued pursuant to the materialmen's lien statute. We disagree.

Here, SCI filed a materialmen's lien against the Walgreens project, BCC filed a bond in contest of the lien, and Travelers issued a lien-release bond as surety on behalf of BCC. If the bond is filed and approved by the circuit clerk, and the claimant, after notice, does not question its sufficiency or form, the lien is discharged and the claimant shall have recourse only against the principal and surety upon the bond. *See Calton Props., Inc. v. Ken's Discount Bldg. Materials, Inc.*, 282 Ark. 521, 522–23, 669 S.W.2d 469, 470 (1984); Ark. Code Ann. § 18-44-118(b). If an action to enforce the lien is filed within the time prescribed for enforcement of a lien against the surety, "the surety shall be liable *in like manner* as the

---

Generally, SCI was to "[p]rovide labor, material, and equipment to perform the demolition, excavation, erosion control, storm drainage, and sanitary sewer main scope of work in accordance with the contract documents outlined in accordance with the contract documents."

SLIP OPINION

principal." *Id.* § 18-14-118(c)(2) (emphasis added). Thus, consistent with well–settled tenets of surety law, under the statute, Travelers, the surety, was liable in like manner as BCC, the principal. Because BCC was not liable, then it follows that Travelers was not liable. We hold that the circuit court erred in denying Travelers' motion for directed verdict.

### III.   *Attorney's Fees*

Because we have concluded that the circuit court erred in denying Travelers' motion for directed verdict, SCI is no longer the prevailing party and is not entitled to attorney's fees under either the subcontract or Arkansas Code Annotated section 16–22–308 (Repl. 1999), the attorney-fee statute, *see, e.g.*, *Riceland Foods, Inc.*, 2009 Ark. 520, at 14–15, 357 S.W.3d 434, 443, and it is not the "successful party" entitled to attorney's fees under Arkansas Code Annotated section 18-44-128 (Supp. 2013) of the materialmen's lien statute. Accordingly, we reverse the award of attorney's fees to SCI.

Finally, we turn to BCC's argument on attorney's fees. Following the circuit court's grant of a directed verdict in favor of BCC, BCC filed a motion for attorney's fees, arguing that, pursuant to both the attorney-fee statute and the terms of the subcontract, BCC was entitled to attorney's fees and costs as the prevailing party on SCI's breach-of-contract claim. In its order denying BCC's motion for attorney's fees, the circuit court found that BCC was not the prevailing party and, that, "even if BCC was the prevailing party, the court would not award fees to it because of its failure to assert the 'pay–if–paid' clause early in the process which caused them to run up a bunch of attorney's fees; and that it would be unconscionable to reward it for that conduct." BCC challenges the ruling that it was not the prevailing party,

but it does not challenge the alternative, independent ruling that it should not be awarded attorney's fees due to its conduct in the case. When a circuit court bases its decision on two independent grounds and the appellant challenges only one of those grounds on appeal, this court will affirm without addressing either. *E.g.*, *Coleman v. Regions Bank*, 364 Ark. 59, 64, 216 S.W.3d 569, 573 (2005).

Affirmed in part, reversed in part on direct appeal; affirmed in part, reversed in part on cross-appeal.

BAKER and HART, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** A subcontractor who has supplied labor and material in the construction of an improvement to real estate by virtue of a contract with a contractor "shall have, to secure payment, a lien" upon the improvement. Ark. Code Ann. § 18-44-101(a) (Repl. 2003). SCI obtained a lien on the project. BCC then contested the lien and purchased from Travelers a lien-release bond in accordance with Arkansas Code Annotated section 18-44-118 (Supp. 2013). According to that statute, the "bond shall be conditioned for the payment of the amount of the lien, or so much of the lien as may be established by suit, together with interest and the costs of the action, if upon trial it shall be found that the property was subject to the lien." Ark. Code Ann. § 18-44-124(a)(2). Recourse is "only against the principal and surety upon the bond." Ark. Code Ann. § 18-44-118(b)(2)(B). Thus, pursuant to these statutes, the bond stands in place of the lien. The statute further provides that if an action to enforce the lien "shall be timely commenced, the surety shall be liable in like manner as the principal." Ark. Code Ann. § 18-44-118(c).

Accordingly, like the principal, the surety is subject to suit.

Here, SCI sued BCC and Travelers, and SCI was awarded damages. The majority concludes, "Because BCC was not liable, then it follows that Travelers was not liable." This conclusion, however, fails to recognize that the bond stood in place of the lien that SCI had obtained against the improvement and secured SCI's payment for the materials and labor it provided. Also, it ignores that Travelers, like BCC, was subject to suit. Moreover, the bond issued by Travelers provided that both it and BCC are "held firmly bound" to SCI as the claimant in the sum of $146,349.86 "for the payment of which . . . we bind ourselves." By its terms, the bond "shall remain in full force and effect" until BCC pays SCI. BCC, however, did not pay SCI any amount on the jury's award of $25,468.20 to SCI. Thus, the bond remained in full force and effect, and Travelers is "firmly bound" to SCI.

The net effect of the majority's holding is to leave SCI with neither a lien nor a bond to "secure payment" for its materials and labor that the jury concluded that SCI had provided. The majority's holding does not give proper respect to our materialmen's lien statutes, and the majority does not cite authority to support its novel interpretation. This court must liberally construe bonds in favor of the laborers and materialmen for whose benefit the bond was given because the sureties on the bond were organized and paid to make surety bonds, and the only protection for the payment for labor performed or material furnished is to be found in terms of a bond. *See generally Holcomb v. Am. Sur. Co.*, 184 Ark. 449, 42 S.W.2d 765, 76 (1931) (applying this analysis in a public-works case). SCI can only look to the bond for payment, and Travelers is in the business of furnishing bonds. Accordingly, the circuit court

did not err in denying the motion for directed verdict made by Travelers.

Furthermore, there was substantial evidence to support the jury's verdict.[1] SCI presented evidence that it performed dirt work and was not paid. At the close of SCI's case, the circuit court granted BCC's motion for directed verdict but denied Travelers' motion for directed verdict. The settled rule is that if a defendant goes forward with "proof after a motion for a directed verdict was denied, any error in denying the motion [is] waived." *Higgins v. Hines*, 289 Ark. 281, 283, 711 S.W.2d 783, 784 (1986). Travelers, rather than standing on the circuit court's denial of its directed-verdict motion, introduced evidence, thus waiving its directed-verdict motion made at the conclusion of SCI's case. Furthermore, if "after the denial of a request for a directed verdict . . . a defendant introduces evidence which, together with that introduced by the plaintiff, is legally sufficient to sustain a verdict, he waives his claim of error by the court in refusing to direct a verdict . . . at the close of the plaintiff's case." *Shamlin v. Shuffield*, 302 Ark. 164, 167, 787 S.W.2d 687, 689 (1990).

Travelers presented testimony from BCC's project manager, Jon Virden, that BCC credited back to the owner $33,145.60 for dirt work that SCI alleged it had performed. After hearing evidence that SCI performed dirt work, that SCI was not paid, and that BCC credited back to the owner the amounts to be paid for dirt work that SCI alleged it had performed, the jury awarded $25,468.20. Thus, the jury had before it evidence that BCC had an allowance for the dirt work but failed to take this allowance and pay SCI. From the evidence

---

[1]Although the majority notes in a footnote that Travelers renewed its motion for a directed verdict at the close of its case, by then evidence had been presented, by Travelers, that supported the circuit court's decision to allow the case to go to the jury.

before it, the jury could reasonably have concluded that the only reason BCC was not paid for SCI's dirt work is because BCC specifically credited back the amount to be paid for the dirt work. The majority, by not acknowledging all of this evidence, fails to conduct a proper analysis of whether substantial evidence supported the jury's verdict against Travelers. In doing so, it denies SCI's proven claim against Travelers and the bond for the work that it performed. This evidence is clearly sufficient to support the jury's verdict. Thus, I must respectfully dissent.

BAKER, J., joins in this dissent.

*Newland & Associates, PLLC*, by: *Joel Hoover* and *Ashlea Brown*, for appellants.

*Blair Arnold*; and *Robert S. Tschiemer*, for appellee.